Hillary R. McCormack, USB No. 11719
Michael D. Zilles, USB No. 16206
LUNDBERG & ASSOCIATES, PC
3269 South Main Street, Suite 100
Salt Lake City, UT 84115
(801) 263-3400
(801) 263-6513 (fax)
LitigationDept@Lundbergfirm.com
*Attorneys for Scott Lundberg Associates, J. Scott Lundberg, eTitle Insurance, and Lundberg & Associates, PC*

L&A Case No. 14.62983.7/JAT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ALICIA KESLER,<br><br>        Plaintiff,<br><br>v.<br><br>COUNTRYWIDE HOME LOANS; SCOTT LUNDBERG ASSOCIATES; J. SCOTT LUNDBERG; ARGENT MORTGAGE; BACKMAN STEWART TITLE CORPORATION;  FIRST FRANKLIN FINANCIAL CORPORATION; FIDELITY NATIONAL TITLE; PNC FINANCIAL SERVICES GROUP, One Time Owner by Acquisition of National City Mortgage Loan Trust 2005-1; FIRST AMERICAN TITLE; SELECT PORTFOLIO SERVCING; ANGELA ATENA; GREG OTT; GARY OTT; CHARLES BROWN & ASSOCIATES, PLLC dba DOCSOLUTION, INC.; eTITLE INSURANCE; SHELLPOINT, LLC; MTGLQ INVESTORS; NEW PENN FINANCIAL, LLC dba SHELLPOINT MORTGAGE SERVICING; STEPHANIE WESSEL; KEVIN MORAN; MARISSA RAMSEY; THE TRUSTEE COMPANY; LUNDBERG & ASSOCIATES, PC; RM LIFESTYLES; and JOHN DOE or MARY ROWE (10),<br><br>        Defendants. | MOTION TO DISMISS WITH PREJUDICE<br><br><br><br>Civil No. 2:18-CV-00469<br><br>Magistrate Judge Brooke C. Wells<br><br>Judge Robert J. Shelby |

Defendants J. Scott Lundberg, eTitle Insurance Agency, LLC (erroneously abbreviated "eTitle Insurance"), Lundberg & Associates, PC, and the erroneously named Scott Lundberg Associates ("defendants"), by and through counsel, hereby move the Court pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for an order dismissing all claims alleged in plaintiff Alicia Kesler's Complaint against them, with prejudice, for failure to state a claim upon which relief may be granted. By filings this motion, defendants do not waive service of process or any challenges to this Court's jurisdiction.

## I.    INTRODUCTION, RELIEF SOUGHT, and GROUNDS

Plaintiff Alicia Kesler ("plaintiff") brought this action nearly nine (9) months after a trustee's sale of real property she formerly owned, which property secured a loan that originated in 2004. However, plaintiff now invites the Court to unwind the sale and penalize, among other parties, the foreclosure trustee, the law firm representing the foreclosure trustee, and a shareholder in the law firm for unspecified bad acts. While difficult to parse, plaintiff's Complaint ranges from an attempted qui tam action pursuant to the federal False Claims Act, a class action suit, a RICO action, and includes references to violations of the Fair Debt Collections Practices Act and acts of mortgage and/or other, unspecified consumer fraud.

The Court should deny plaintiff's invitation for several reasons: plaintiff's claims are inadequately pled, allege violation of the Fair Debt Collection Practices Act (FDCPA) when the act is inapplicable to defendants or the foreclosure, and are untimely. The facts are that plaintiff executed a promissory note and trust deed and later defaulted on her payment obligations. Thereafter, the beneficiary of the trust deed initiated non-judicial foreclosure proceedings—a

regular, and expected, consequence of failing to make mortgage payments. Because plaintiff's Complaint does not allege facts sufficient to state any claims against defendants, plaintiff's Complaint should be dismissed in its entirety, with prejudice.

## II.    STATEMENT OF FACTS

Pursuant to Rules 12(b) and 10(c) of the Federal Rules of Civil Procedure, and DUCivR 7-1, the following statement of facts is derived from the Complaint in this matter, documents referenced in the Complaint[1], and matters subject to judicial notice pursuant to Rule 201 of the Federal Rules of Evidence[2], and are set forth for the purposes of this motion only.

1.    On or about December 16, 2004, plaintiff Alicia Kesler, also known as Alicia D. Kesler, as trustor, executed and delivered to First American Title, as trustee, for the benefit of First Franklin Financial Corporation, its successors and assigns, as beneficiary, a Deed of Trust ("Trust Deed") secure the performance by the trustor of her obligations under a certain Note (described below), which was executed and delivered for valid consideration on or about December 16, 2004. (*See* Compl. page 17, ¶ 30.1). A copy of the Trust Deed is attached hereto, with sensitive information redacted, as Exhibit A.

---

1 "[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss" without converting the motion to one for summary judgment. *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (internal citations omitted). "A document that is referred to in the complaint . . . is not considered to be a matter outside the pleadings" for purposes of a motion under Rule 12(b)(6). 11 James Wm. Moore et al., *Moore's Federal Practice* 56.30[4] (3d ed. 2008).

2 A court may take judicial notice of documents recorded in the office of a county recorder on a motion to dismiss. *Burnett v. Mortgage Electronic Registration Sys., Inc.*, No. 1:09-cv-00069-DAK, 2009 U.S. Dist. LEXIS 100409, at *17-18 (D. Utah Oct. 27, 2009).

2.      The Trust Deed was recorded in the Salt Lake County Recorder's Office on December 22, 2004 as Entry No. 9256498 and covered real property located at 7508 West Perennial Drive, Magna, UT 84044, more particularly described as:

> Lot 209, EVERGREEN FARMS, PHASE 2, SUBDIVISION, according to the official plat thereof on file and of record in the Salt Lake County Recorder's Office.
>
> Tax Serial No. 14-28-254-006
>
> *See* Exhibit A (*See also* Compl. page 15, ¶ 23; page 17, ¶ 30.1).

3.      The Trust Deed states, *inter alia*, that if the borrower breaches any covenant or agreement contained in the security instrument, and the lender has given the borrower notice of the opportunity to cure his or default, "If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law." (*See* Exhibit A, page 10, ¶ 22).

4.      On or about August 20, 2015, PNC Bank, National Association, the current beneficiary of the Trust Deed, executed a Substitution of Trustee (the "Substitution of Trustee") naming eTitle Insurance Agency the successor trustee of the Trust Deed. A copy of the Substitution of Trustee is attached hereto, with sensitive information redacted, as Exhibit B.[3]

5.      The Substitution of Trustee was recorded in the Salt Lake County Recorder's Office on September 3, 2015 as Entry No. 12126188.  *See* Exhibit B.

6.      On September 3, 2015, eTitle Insurance Agency, as trustee of the Trust Deed,

---

3 *See supra* note 2.

executed a Notice of Default and Election to Sell (the "Notice of Default") stating, *inter alia*, plaintiff Alicia Kesler aka Alicia D. Kesler's monthly payment obligation was in default, the loan balance had been accelerated, and the trustee had elected to sell the Property. A copy of the Notice of Default is attached hereto, with sensitive information redacted, as Exhibit C.[4]

7.      The Notice of Default was recorded in the Salt Lake County Recorder's Office on September 3, 2015 as Entry No. 12126189.  *See* Exhibit C.

8.      The default was not cured, and the Property was sold at a trustee's sale on September 25, 2017 to RM Lifestyles LLC. A copy of the Trustee's Deed is attached hereto, with sensitive information redacted, as Exhibit D.[5]

9.      The Trustee's Deed was recorded in the Salt Lake County Recorder's Office on September 26, 2017 as Entry No. 12624068.  *See* Exhibit D.

10.      The trustee's sale resulted in excess proceeds, which the trustee deposited with the Third District Court. *See* docket for Case No. 170906795, Third District Court, Salt Lake County, Utah, a copy of which is attached hereto as Exhibit E.

11.      Plaintiff petitioned the Third District Court for distribution of the excess proceeds to her, and ultimately stipulated to dividing them with her former counsel. *See* Exhibit E.

12.      Plaintiff filed this action on or about June 12, 2018, but has yet to serve defendants pursuant to Rule 4 of the Federal Rules of Civil Procedure.

### III.      LEGAL STANDARD

Rule 12(b)(6) requires Plaintiff to allege facts which, if true, would provide adequate

---

4 *Id.*

5 *Id.*

grounds for relief; "formulaic recitation of the elements of a cause of action" will not suffice. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). The Supreme Court has recently reiterated that Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 570).

When evaluating a Rule 12(b)(6) motion to dismiss, "the court presumes the truth of all well-pleaded facts in the complaint, but need not consider conclusory allegations." *Margae, Inc. v. Clear Link Tech.*, 620 F. Supp. 2d 1284, 1285 (D. Utah 2009) (internal citations omitted). "Conclusory allegations are allegations that do not allege the factual basis for the claim." *Id.* (internal citations and quotations omitted). "The court is not bound by a complaint's legal conclusions, deductions and opinions couched as facts." *Id.* "Further, though all reasonable inferences must be drawn in the non-moving party's favor, a complaint will only survive a motion to dismiss if it contains enough facts to state a claim to relief that is plausible on its face." *Id.* (internal citations and quotations omitted).

## IV.    ARGUMENT

**A.    Plaintiff's Complaint pleads no facts sufficient to overcome the presumption and prima facie evidence of compliance with Utah's non-judicial foreclosure statutes.**

Plaintiff's complaint makes broad statements that all defendants have engaged in a

wrongful non-judicial foreclosure in violation of state law and/or that non-judicial foreclosure as a practice is somehow wrongful. However, plaintiff's complaint includes no facts as to what specific conduct defendants engaged in that could be found wrongful. The State of Utah authorized non-judicial foreclosure of trust deeds. *See* Utah Code section 57-1-19, *et seq*. Moreover, Utah Code section 57-1-28 permits a trustee's deed to contain "recitals of compliance with Sections 57-1-19 through 57-1-36 relating to the exercise of the power of sale and the sale of the subject property." Utah Code § 57-1-28(2)(b). These recitals "(i) constitute prima facie evidence of compliance with Sections 57-1-19 through 57-1-36..." Utah Code § 57-1-28(2)(c).

Plaintiff's failure to allege the who, what, where, and when of her claims against defendants, let alone facts sufficient to overcome the prima facie evidence of statutory compliance afforded the Trustee's Deed, renders her Complaint without merit, and it should be dismissed with prejudice.

**B.     Plaintiff's claims are inadequately pled because she does not allege any duty defendants owed her, are not pled with sufficient particularity, and do not contain sufficient detail to put defendants on notice of her claims or theories.**

1.      No duty alleged.

Plaintiff's Complaint makes vague assertions that defendants—specifically Scott Lundberg and eTitle Insurance Agency—served as trustees of various trust deeds secured by the Property. *See generally* Compl. pages 15-19. Plaintiff then alleges trustees have not recorded "balancing reports" and various deeds of trust led to a "rounding error" that somehow benefited defendants. S*ee* Compl. page 16, ¶¶ 25.2, 29. However, plaintiff has identified no specific duty defendants owed her, and breached, that would give rise to liability or a concrete injury this

Court could remedy. On the contrary, Utah courts have repeatedly held "[a] trustee's primary obligation is to assure the payment of the debt secured by the trust deed." *Russell v. Lundberg*, 2005 UT App 315, ¶ 18, 120 P.3d 541, 545 (Utah Ct. App. 2005) *citing Five F, L.L.C. v. Heritage Sav. Bank*, 2003 UT App 373, ¶¶ 13-15, 81 P.3d 105 (Utah Ct. App. 2003). eTitle Insurance Agency fulfilled its duty by conducting the trustee's sale, applying the sale proceeds to the costs and expenses of sale and the obligation secured by the trust deed, and then depositing the remainder with clerk of the court. Plaintiff has identified no other duty or obligation eTitle has to provide a balancing report or information concerning some sort of undefined "rounding error". Furthermore, plaintiff has also failed to identify any obligation a law firm representing a foreclosure trustee (Lundberg & Associates, PC; also erroneously named in the Complaint as "Scott Lundberg Associates") and a shareholder in that law firm (J. Scott Lundberg) owe her.

Plaintiff's Complaint also fails to consider the effect of Utah Code section 57-1-22.1(3), which provides:

> "If a party in a legal action that involves a trust deed joins the trustee in an action that does not pertain to the trustee's obligations under this chapter or under the trust deed, the court shall dismiss the action against the trustee and award the trustee reasonable attorney fees arising from the trustee being joined in the legal action."

Utah Code § 57-1-22.1(3)

Because Plaintiff's Complaint fails to plead facts related to any obligations defendants may have under the non-judicial foreclosure statutes or the Trust Deed, this Court should likewise dismiss any trustee, including eTitle Insurance Agency and J. Scott Lundberg, and award them their reasonable attorney fees.

2.      *Qui Tam* Civil Action Inadequately Pled.

Additionally, Plaintiff's claims as they may relate to a qui tam action pursuant to the federal False Claims Act in that plaintiff fails to identify what false claim defendants submitted that would give rise to liability under the False Claims Act. Under the federal False Claims Act, "a private person (the relator) may bring a *qui tam* civil action 'in the name of the [Federal] Government,' 31 U.S.C. § 3730(b)(1), against '[a]ny person' who, *inter alia*, knowingly presents...to...the..Government...a false or fraudulent claim for payment,' § 3729(a)." *Vermont Agency of Natural Resources v. U.S. Ex rel. Stevens*, 529 U.S. 765, 120 S.Ct. 1858, 1859. Numerous federal circuits have also concluded "claims brought under the federal False Claims Act (FCA) must be pled with particularity under rule 9(b) of the Federal Rules of Civil Procedure." *State v. Apotex Corp*., 2012 UT 36, ¶23, 282 P.3d 66, 73 (Utah 2012) citing *U.S. Ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 45 (1st Cir.2009).

Plaintiff's Complaint contains no details or specifics that would satisfy either Rule 9(b) of the Federal Rules of Civil Procedure or would put any party on notice as to what, who, when, etc. presented a false claim to to the government for payment. Therefore, Plaintiff's Complaint should be dismissed.

3.      Fraud claims not pled with particularity.

While plaintiff's Complaint alleges parties (presumably all defendants) engaged in "consumer fraud" and mortgage fraud pursuant to Utah Code section 76-6-1203, plaintiff's Complaint is devoid of the necessary, specific allegations required by Rule 9(b) of the Federal Rules of Civil Procedure. Plaintiff's Complaint fails to allege facts that satisfy the elements of

fraud, despite the requirement that, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). In addition, courts in this circuit require, "a complaint alleging fraud to 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'" *Koch v. Koch Industries, Inc.*, 203 F.3d 1202, 1235 (10th Cir.2000) *citing Lawrence Nat'l Bank v. Edmonds (In re Edmonds)*, 924 F.2d 176, 180 (10th Cir.1991).

Utah state law is similar, requiring a plaintiff bringing a claim for fraud to allege the necessary elements of fraud:

> "1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage." *Gold Standard, Inc. v. Getty Oil Co*., 915 P.2d 1060, 1066-67 (Utah 1996) (citations omitted).

Moreover, "the relevant surrounding facts 'must be set forth with sufficient particularity to show what facts are claimed to constitute such charges.'" *Armed Forces Ins. Exchange v. Harrison*, 2003 UT 14, ¶ 16, 70 P.3d 35 (Utah 2003), quoting *Williams v. State Farm Ins. Co., 656 P.2d 966, 971* (Utah 1982)(internal citations omitted). Plaintiff's Complaint contains no such particular facts that would put defendants on notice as to what plaintiff claims constituted fraud on defendants' part.

Similarly, the Utah Mortgage Fraud Act, cited and quoted in plaintiff's Complaint, requires a similar issuance of and reliance on a material misstatement with the intent to defraud as part of the "mortgage lending process." Utah Code § 78B-6-1203. However, the Utah

Mortgage Fraud Act defines the mortgage lending process as "...the process through which a person seeks or obtains a mortgage loan, including solicitation, application, or origination, negotiation of terms, third party provider services, underwriting, signing and closing, and funding of the loan." Utah Code § 78B-6-1202(1). Plaintiff's Complaint again fails to allege defendants where in any way engaged or involved in the mortgage lending process by which plaintiff obtained loan(s). Notably, the Trust Deed and the loan it secured, which were the subject of foreclosure, originated in 2004. *See* Exhibit A. Utah Code section 78B-2-305(3) provides a three year statute of limitations for fraud claims. Therefore, even if plaintiff had viable fraud claims related to the mortgage lending process, the statute of limitations to assert them would have run in 2007.

### C.      Plaintiff's claims are untimely.

In addition to plaintiff's claims being inadequately pled, they are also untimely, coming approximately nine (9) months after the trustee's sale of the Property. The Utah Supreme Court recently rejected an occupant's attempt to litigate claims regarding a previous foreclosure sale in an eviction action, *Bank of America v. Adamson*, 2017 UT 2, ¶¶ 16-17. 319 P.3d 196. This is because, "[i]n most cases, Utah law requires 'that a trustor assert her rights before the trustee's sale...'" *Id. quoting Reynolds v. Woodall*, 2012 UT App 206, ¶ 16, 295 P.3d 7. Indeed, "a trustor 'may by acquiescence and failure to assert his rights at the proper time be estopped to set up irregularities in the foreclosure proceedings to defeat rights of the purchaser.'" *Id. quoting Am. Falls Canal Sec. Co. v. Am. Sav. & Loan Ass'n*, 775 P.2d 412, 414 (Utah 1989)(citation omitted).

The Court in *Adamson* went on to explain this is meant to protect bona fide purchasers

("Our statutes protect a bona fide purchaser at a public sale under a trust deed, by permitting him to rely on the recitals in the deed he receives from the trustee after the sale." *Id.* at ¶ 17 *quoting Reynolds*, 2012 UT App 206, ¶ 17 n.5, 263 P.3d 1152), and "[r]aising any issues with the foreclosure process prior to the sale furthers the policy of 'protecting the validity of trustee's deeds, thus promoting bidding at trustee's sales and improving the changes that a sale will be for fair market value.'" *Id*. at ¶ 18 *quoting Reynolds*, 2012 UT App 206, ¶¶ 116, 18. Therefore,"[t]he remedy of setting aside the sale will be applied only in cases which reach unjust extremes." *Id. quoting Concepts, Inc. v. First Sec. Realty Servs., Inc*., 743 P.2d 1158, 1159 (Utah 1987). There are no such unjust extremes here in relying on a Trustee's Deed that is prima facie evidence of a valid trustee's sale over plaintiff's nebulous claims. The Property was sold nearly nine (9) months ago to a third party purchaser for value. *See* Exhibit D. Plaintiff has pleaded no facts or offered the Court no authority on which she could rely to justify bringing her claims months after the trustee's sale was completed and years after the Notice of Default was recorded, especially when plaintiff personally profited from the trustee's sale by claiming and receiving excess proceeds. *See* Exhibit E. Therefore, plaintiff's claims are untimely, and should be dismissed.

**D.     Plaintiff's FDCPA-based claims, should her Complaint assert any, fail because non-judicial foreclosure is not subject to the FDCPA.**

In addition to various fraud-related assertions, plaintiff's Complaint also makes vague references to violations of the Fair Debt Collection Practices Act (FDCPA). Plaintiff's claims are inadequately pled in that they fail to identify which identify violated the FDCPA and what

conduct she alleges violated the FDCPA. Nevertheless, even if plaintiff's Complaint had included such necessary details, various Utah courts have ruled that non-judicial foreclosures do not constitute the collection of a debt within the purview of the FDCPA or the FDCPA is otherwise inapplicable. See *Kee v. R-G Crown Bank,* 656 F.Supp.2d 1348, 1354 (D. Utah 2009) ("a non-judicial foreclosure is not the collection of a debt under the FDCPA"), *Long v. Wells Fargo Bank, N.A.,* 2015 U.S. Dist. LEXIS 35207, at *13 (D. Utah Mar. 17, 2015); *Burnett v. Mortg. Elec. Registration Sys*., 2009 U.S. Dist. LEXIS 100409, at *8 (D. Utah Oct. 26, 2009); *Maynard v. Cannon*, 650 F. Supp. 2d 1138, 1144-45 (D. Utah 2008).

Therefore, because non-judicial foreclosure is not subject to the FDCPA, and plaintiff fails to allege any other facts to explain how defendants are liable to her for perceived FDCPA violations, plaintiff's FDCPA-based claims fail, and must be dismissed.

## V.   CONCLUSION

As the foregoing details, plaintiff fails to plead facts sufficient to state any claim against MSNI upon which relief may be granted. As such, MSNI respectfully requests that its Motion to Dismiss with Prejudice be granted and plaintiff's Complaint be dismissed in its entirety with prejudice, and for such further relief as this Court deems just and proper.

DATED this 3rd day of July, 2018.

LUNDBERG & ASSOCIATES, PC

 /s/ Hillary R. McCormack
Hillary R. McCormack
*Attorneys for J. Scott Lundberg, eTitle Insurance,*
*Lundberg & Associate, PC, and Scott Lundberg*
*Associates*

CERTIFICATE OF SERVICE

I certify that on 3rd day of July, 2018, I caused a copy of the foregoing Motion to Dismiss

with Prejudice to be mailed, postage pre-paid, or served by electronic means to:

Via U.S. Mail:

Alicia Kesler
5313 West Vista Peak Drive
West Jordan, UT 84081

Via CM/ECF:

Chandler P. Thompson
Alan M. Hurst
Akerman LLP
170 South Main Street, Suite 725
Salt Lake City, UT 84101

 /s/ Hillary R. McCormack

# EXHIBIT "A"

9256498
12/22/2004 02:20 PM $42.00
Book - 9076 Pg - 611-627
GARY W. OTT
RECORDER, SALT LAKE COUNTY, UTAH
FIRST AMERICAN TITLE
BY: LVG, DEPUTY - WI 17 P.

After Recording Return To:

FIRST FRANKLIN FINANCIAL CORP.
ATTENTION: RECORDS MANAGEMENT
2150 NORTH FIRST STREET
SAN JOSE, CA 95131

—————————— [Space Above This Line For Recording Data] ——————————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated December 16, 2004 , together with all Riders to this document.
**(B) "Borrower"** is ALICIA D KESLER, AN UNMARRIED WOMAN

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is FIRST FRANKLIN FINANCIAL CORPORATION
Lender is a Corporation organized and existing under the laws of Delaware . Lender's address is
2150 NORTH FIRST STREET, SAN JOSE, California 95131

. Lender is the beneficiary under this Security Instrument.

**(D) "Trustee"** is FIRST AMERICAN TITLE

**(E) "Note"** means the promissory note signed by Borrower and dated December 16, 2004 . The Note states that Borrower owes Lender One Hundred Sixty Eight Thousand and no/100
Dollars (U.S. $168,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than January 01, 2035 .
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider    [ ] Condominium Rider    [ ] Second Home Rider

[ ] Balloon Rider    [ ] Planned Unit Development Rider    [X] Other(s) [specify] Prepay Rider

[ ] 1-4 Family Rider    [ ] Biweekly Payment Rider

UTAH—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     **Form 3045 1/01**
ITEM 1971L1 (0011) MFUT3111     *(Page 1 of 12 pages)*     GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

**BK 9076 PG 611**

**(I)** "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(J)** "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(K)** "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(L)** "**Escrow Items**" means those items that are described in Section 3.
**(M)** "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(N)** "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(O)** "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P)** "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
**(Q)** "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants, conveys and warrants to Trustee, in trust, with power of sale, the following described property located in the           COUNTY                of              SALT LAKE                :
                                                            [Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

which currently has the address of              7508 WEST PERENNIAL DRIVE
                                                                      [Street]

        MAGNA                     , Utah              84044                  ("Property Address"):
        [City]                                       [Zip Code]

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

UTAH—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                                                              Form 3045 1/01
ITEM 1971L2 (0011) MFUT3111                                   *(Page 2 of 12 pages)*  BK 9076 PG 612  To Order Call: 1-800-530-9393 □ Fax: 616-791-1131
                                                                                                                                              GREATLAND ■

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant, convey and warrant the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive

UTAH—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT       Form 3045 1/01

ITEM 1971L3 (0011)   MFUT3111      *(Page 3 of 12 pages)*   BK 9076 PG 613   GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and

**UTAH**—Single Family—Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**

ITEM 1971L4 (0011) MFUT3111                    *(Page 4 of 12 pages)*

Form 3045 1/01
GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

BK 9076 PG 614

subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

UTAH—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT       Form 3045 1/01

ITEM 1971L5 (0011) MFUT3111      *(Page 5 of 12 pages)* BK 9076 PG 615    GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8.  Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9.  Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10.  Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has—if any—with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

11.   **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

**UTAH**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

ITEM 1971L7 (0011)   MFUT3111                         *(Page 7 of 12 pages)*

**Form 3045 1/01**
GREATLAND ■
To Order Call: 1-800-530-9393 □Fax: 616-791-1131

BK 9076 PG 617

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with

**UTAH**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

ITEM 1971L8 (0011)  MFUT3111                                    *(Page 8 of 12 pages)*

Form 3045 1/01
GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

**BK 9076 PG 618**

Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17.   Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18.   Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19.   Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20.   Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If the power of sale is invoked, Trustee shall execute a written notice of the occurrence of an event of default and of the election to cause the Property to be sold and shall record such notice in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice in the manner prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. In the event Borrower does not cure the default within the period then prescribed by Applicable Law, Trustee shall give public notice of the sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines (but subject to any statutory right of Borrower to direct the order in which the Property, if consisting of several known lots or parcels, shall be sold). Trustee may in accordance with Applicable Law, postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security

Instrument; and (c) any excess to the person or persons legally entitled to it or to the county clerk of the county in which the sale took place.

   23.  **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

   24.  **Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

   25.  **Request for Notices.** Borrower requests that copies of the notices of default and sale be sent to Borrower's address which is the Property Address.

UTAH—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM 1971L11 (0011) MFUT3111                                         *(Page 11 of 12 pages)*

Form 3045 1/01
GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

BK 9076 PG 621

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 12 of this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)                    _____ (Seal)
ALICIA D. KESLER                          -Borrower                                                     -Borrower


_____ (Seal)                    _____ (Seal)
                                          -Borrower                                                     -Borrower


_____ (Seal)                    _____ (Seal)
                                          -Borrower                                                     -Borrower


Witness:                                                  Witness:

_____                          _____


State of  Utah                                )
                                              ) SS.
County of  Salt Lake                          )

The foregoing instrument was acknowledged before me this  December 17 2004          (date) by
ALICIA D. KESLER

                                                              (person[s] acknowledging).

_____

Notary Public residing at:

My commission expires:

NOTARY PUBLIC
DEBRA QUINN
4516 South 700 East   160
Salt Lake City, Utah  84107
My Commission Expires
January 8, 200?
STATE OF UTAH

UTAH—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                              Form 3045 1/01
                                                                                          GREATLAND ■
ITEM 1971L12 (0011) MFUT3111              *(Page 12 of 12 pages)*        To Order Call: 1-800-530-9393 □Fax: 616-791-1131



**EXHIBIT "A "**

LOT 209, EVERGREEN FARMS, PHASE 2, SUBDIVISION, ACCORDING TO THE OFFICIAL PLAT THEREOF ON FILE AND OF RECORD IN THE SALT LAKE COUNTY RECORDER'S OFFICE.

**BK 9076 PG 623**

# PREPAYMENT RIDER

This Prepayment Rider is made this　　16th　　day of　　December 2004　　,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or the
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure
Borrower's Note (the "Note") to
**FIRST FRANKLIN FINANCIAL CORPORATION**
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

> 7508 WEST PERENNIAL DRIVE
> MAGNA, UT 84044

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

Except as provided below, Borrower may make a full prepayment or partial prepayment of principal at any
time without paying any charge. However, if within the first　　36　　months after the date Borrower
executes the Note, Borrower makes a full prepayment (including prepayments occurring as a result of the
acceleration of the maturity of the Note), Borrower must, as a condition precedent to a full prepayment, pay a
prepayment charge on the prepayment of that amount of principal which exceeds 20% of the principal amount
stated in the Note (the "Excess Principal"). The prepayment charge will equal the interest that would accrue
during a six-month period on the Excess Principal calculated at the rate of interest in effect under the terms of
the Note at the time of the full prepayment.

## NOTICE TO BORROWER

**Do not sign this loan agreement before you read it. This loan agreement provides for the payment of a
penalty if you wish to repay the loan prior to the date provided for repayment in the loan agreement.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Prepayment Rider.

_____(Seal)　　　_____(Seal)
ALICIA D. KESLER　　　-Borrower　　　　　　　　　　　　　　　　　　　-Borrower

_____(Seal)　　　_____(Seal)
　　　　　　　　　　　　　　-Borrower　　　　　　　　　　　　　　　　　　　-Borrower

_____(Seal)　　　_____(Seal)
　　　　　　　　　　　　　　-Borrower　　　　　　　　　　　　　　　　　　　-Borrower

**Adjustable Rate Prepayment Rider - First Lien – AK, AL, AZ, CA, CO, CT, DC, DE, FL, GA, HI, IA, ID, KS, LA, MA, MD, MN,
MS, MT, ND, NE, NH, NJ, NM, NV, NY, OK, OR, PA, RI, SC, SD, TN, TX, UT, VA, VT, WA, WY**

# ADJUSTABLE RATE RIDER
### (LIBOR 6 Month Index (As Published In The Wall Street Journal) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this        16th      day of          December 2004
, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
FIRST FRANKLIN FINANCIAL CORPORATION
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

7508 WEST PERENNIAL DRIVE
MAGNA, UT  84044
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of        6.2500%. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
   **(A)   Change Dates**
   The interest rate I will pay may change on the first day of            January 2008             ,
and on that day every        6th        month thereafter. Each date on which my interest rate could change is called a "Change Date."
   **(B)   The Index**
   Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for 6 month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."
   If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
   **(C)   Calculation of Changes**
   Before each Change Date, the Note Holder will calculate my new interest rate by adding  Four and Three Eighths
percentage points (        4.3750%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

**MULTISTATE ADJUSTABLE RATE RIDER-LIBOR 6 MONTH INDEX
(AS PUBLISHED IN THE WALL STREET JOURNAL) -- Single Family**

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D)   Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than           9.2500 % or less than          6.2500 %.  Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One

percentage point(s) (          1.0000 %) from the rate of interest I have been paying for the preceding          6         months; subject to the following limits: My interest rate will never be greater than           12.2500 %, nor less than          6.2500 %.

**(E)   Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)   Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given me and also the telephone number of a person who will answer any question I may have regarding the notice.

**B.   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 17 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.**  If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.  Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption.  Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument.  Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 3 of this Adjustable Rate Rider.

_____ (Seal)        _____ (Seal)
ALICIA D. KESLER              -Borrower                                      -Borrower

_____ (Seal)        _____ (Seal)
                              -Borrower                                      -Borrower

_____ (Seal)        _____ (Seal)
                              -Borrower                                      -Borrower

                                                              *[Sign Original Only]*

GREATLAND ■
To Order Call: 1-800-530-9393 □Fax 616-791-1131

**BK 9076 PG 627**

# EXHIBIT "B"

12126188
9/3/2015 11:50:00 AM $10.00
Book - 10358 Pg - 9100
Gary W. Ott
Recorder, Salt Lake County, UT
eTITLE INSURANCE AGENCY
BY: eCASH, DEPUTY - EF 1 P.

**After Recording Return to:**
eTitle Insurance Agency
3269 South Main Street, Suite 100
Salt Lake City, UT 84115



(Space above for County Recorder's use)

## SUBSTITUTION OF TRUSTEE

eTitle Insurance Agency, 3269 South Main Street, Suite 100, Salt Lake City, Utah 84115, is hereby appointed successor trustee under the trust deed executed by Alicia D. Kesler, as trustor, in which First Franklin Financial Corporation is named as beneficiary, and First American Title as trustee, and filed for record on December 22, 2004, with recorder's entry No. 9256498, in book 9076, at page 611, Salt Lake County, Utah.  The undersigned beneficiary hereby ratifies and confirms all actions taken on its behalf by the successor trustee prior to the recording of this instrument.

The Trust Deed covers the following described real property situated in Salt Lake County, Utah:

Lot 209, EVERGREEN FARMS, PHASE 2, SUBDIVISION, according to the official plat thereof on file and of record in the Salt Lake County Recorder's Office.

DATED:  _____8·20·2015_____

PNC Bank, National Association, Beneficiary, by Select Portfolio Servicing, Inc., as Attorney in Fact

By _____ 8·20·15

Printed name:   **Angela Atene**

Its:   Document Control Officer

State of _____**Utah**_____   )
                                        : ss.
County of _____**Salt Lake**_____   )

On this 20ᵀᴴ day of August, 20 15, before me personally appeared Angela Atene, **Personally Known** a **Document Control Officer** of Select Portfolio Servicing, Inc., as attorney in fact for PNC Bank, National Association, proved on the basis of satisfactory evidence to be the person whose name is subscribed to this instrument, and acknowledged that he executed the same.

Witness my hand and official seal.

_____

Version 5                                                                    Revised 03/24/2014



D. CHAD TRUMP
Notary Public State of Utah
My Commission Expires on:
August 23, 2017
Comm. Number: 669749

# EXHIBIT "C"

12126189
9/3/2015 11:50:00 AM $10.00
Book - 10358 Pg - 9101
Gary W. Ott
Recorder, Salt Lake County, UT
eTITLE INSURANCE AGENCY
BY: eCASH, DEPUTY - EF 1 P.

After Recording Return To:
eTitle Insurance Agency
3269 South Main Street, Suite 100
Salt Lake City, UT 84115



(Space above for County Recorder's use)

## NOTICE OF DEFAULT AND ELECTION TO SELL

Alicia D. Kesler, as trustor, executed a trust deed dated December 16, 2004 to secure the performance of promissory note obligations. The trust deed was filed for record on December 22, 2004, with recorder's entry No. 9256498, Salt Lake County, Utah, and covers the following real property:

Lot 209, EVERGREEN FARMS, PHASE 2, SUBDIVISION, according to the official plat thereof on file and of record in the Salt Lake County Recorder's Office.

Together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property.

The monthly payment obligation set forth in the promissory note is in default. All delinquent monthly payments, together with all unpaid taxes, insurance and other obligations under the promissory note and trust deed, are due. Under the provisions of the promissory note and trust deed, the unpaid principal balance is accelerated and now due, together with accruing interest, late charges, costs and trustees' and attorneys' fees. Accordingly, the trustee has elected to sell the property described in the trust deed.

DATED: _9-3-15_

eTitle Insurance Agency, Trustee

By: _____
Printed Name: _Tom Cook_
Authorized Officer
3269 South Main, Suite 100
Salt Lake City, UT 84115
Office Hours: 8:00 a.m. – 5:00 p.m.
801-263-3400

> Candyce Christensen
> Notary Public State of Utah
> My Commission Expires on:
> August 1, 2019
> Comm. Number: 684392

State of Utah          )
                       : ss.
County of Salt Lake    )

On this _3rd_ day of _September_, 2015, _Tom Cook_, an authorized officer of eTitle Insurance Agency, trustee, appeared before me and acknowledged that he executed the foregoing instrument.

_____
Notary Public

# EXHIBIT "D"



12624068
9/26/2017 3:27:00 PM $12.00
Book - 10602 Pg - 5218-5219
ADAM GARDINER
Recorder, Salt Lake County, UT
eTITLE INSURANCE AGENCY
BY: eCASH, DEPUTY - EF 2 P.

After Recording Return To:
RM Lifestyles LLC
11455 South 3420 West
South Jordan, UT 84095



(Space above for County Recorder's use)

### TRUSTEE'S DEED

This deed is made by eTitle Insurance Agency ("eTitle"), as trustee under the trust deed described below, in favor of RM Lifestyles LLC, 11455 South 3420 West, South Jordan, UT 84095, as grantee.

Alicia D. Kesler, as trustor, executed and delivered to First American Title, as trustee, for the benefit of First Franklin Financial Corporation, a Corporation, as beneficiary, a trust deed dated December 16, 2004 to secure the performance of obligations under a promissory note executed and delivered for a valid consideration on or about December 16, 2004. The trust deed was filed for record December 22, 2004, with recorder's entry No. 9256498 in Book 9076, at Page 611, Salt Lake County, Utah, and covered the property described below (the "Property").

eTitle was appointed as trustee by filed for record September 3, 2015, with recorder's entry No. 12126188 in Book 10358, at Page 9100, Salt Lake County, Utah.

A default occurred under the terms of the promissory note and trust deed. A written notice of default and election to sell (the "Notice of Default") was recorded on September 3, 2015, with recorder's entry No. 12126189 in Book 10358, at Page 9101, Salt Lake County, Utah.

Within ten days after the Notice of Default was recorded, a copy of the Notice of Default reflecting the recording data was mailed, by certified mail, to each person whose name and address were set forth in a request for notice filed for record prior to the filing of the Notice of Default.

The default was not cured within three months after the filing of the Notice of Default and the trustee executed a Notice of Trustee's Sale stating that it would sell the Property at public auction to the highest bidder, fixing the date and time of the sale as August 11, 2017, at 10:30 AM, and caused copies of the Notice of Trustee's Sale to be posted on the Property and in the office of the Salt Lake County Recorder not fewer than 20 days before the date of sale. eTitle also caused a copy of the Notice of Trustee's Sale to be published once a week for three consecutive weeks before the date of sale in the Intermountain Commercial Record, a newspaper having a general circulation in the county in which the Property is situated, the first date of such publication being July 11, 2017, and the last date being July 25, 2017. At least 20 days before the date of the sale, the trustee also mailed, by certified mail, a copy of the Notice of Trustee's Sale to each person whose name and address were set forth in a request for notice filed for record prior to the filing of the Notice of Default.

All applicable statutory requirements of the State of Utah and all of the requirements of the trust deed were met with respect to the acts to be performed and notices to be given. At the time and place of sale the sale was postponed as allowed by statute. The postponed sale was held September 25, 2017 at 10:30 AM and the Property was sold to the grantee. Accordingly, eTitle, by virtue of its authority under the trust deed and in consideration of the premises recited and of the $247,100.00 bid and paid by the grantee, grants and conveys to the grantee, without any covenant or warranty, express or implied, effective as of the time of the sale, all of the Property situated in Salt Lake County, Utah, described as follows:

> Lot 209, EVERGREEN FARMS, PHASE 2, SUBDIVISION, according to the official plat thereof on file and of record in the Salt Lake County Recorder's Office.

> Together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property.

DATED: _9/26/17_

eTitle Insurance Agency, Trustee

Printed Name: _Lori King_
Authorized Officer
3269 South Main, Suite 100
Salt Lake City, UT 84115
Office Hours: 8:00 a.m. – 5:00 p.m.
801-263-3400

State of Utah          )
                       : ss.
County of Salt Lake    )

On this _26th_ day of _September_, 2017, before me, _Kristen Brumfield_, a notary public, personally appeared _Lori King_, an authorized officer of eTitle Insurance Agency LLC, trustee, proved on the basis of satisfactory evidence to be the person whose name is subscribed to in this document, and acknowledged that he executed the same.

_Kristen Brumfield_
Notary Public

KRISTEN BRUMFIELD
Notary Public State of Utah
My Commission Expires on:
February 20, 2021
Comm. Number: 693132

# EXHIBIT "E"

```
                   3RD DISTRICT COURT - SALT LAKE
                  SALT LAKE COUNTY, STATE OF UTAH


         7508 WEST PERENNIAL DRIVE MAGN vs. ALICIA D KESLER
CASE NUMBER 170906795 Lien/Mortgage Fcls
```
_____


```
CURRENT ASSIGNED JUDGE
        BARRY LAWRENCE


PARTIES
        Plaintiff -  7508 WEST PERENNIAL DRIVE MAGN
        Represented by: J SCOTT LUNDBERG
        Defendant - ALICIA D KESLER
        Represented by: GREGORY B WALL
        Represented by: CORY R WALL
        Represented by: CANDICE L RAGSDALE POLLOCK
        Claimant -  WALL & WALL
        Claimant -  FIRST FRANKLIN FINANCIAL
        Claimant -  FIRST FRANKLIN FINANCIAL CORPO
        Claimant - ALICIA KESLER


ACCOUNT SUMMARY
        TOTAL REVENUE  Amount Due:        410.00
                       Amount Paid:       410.00
                             Credit:        0.00
                            Balance:        0.00
        TRUST TOTALS    Trust Due:      12,489.02
                       Amount Paid:     12,489.02
                             Credit:        0.00
                   Trust Balance Due:        0.00
                     Balance Payable:        0.00
        REVENUE DETAIL - TYPE: COMPLAINT 10K-MORE
                        Amount Due:        360.00
                       Amount Paid:        360.00
                      Amount Credit:         0.00
                            Balance:         0.00
        REVENUE DETAIL - TYPE: PETN TRUSTEES SALE
                        Amount Due:         50.00
                       Amount Paid:         50.00
                      Amount Credit:         0.00
Printed: 07/03/18 15:29:14        Page 1
```

CASE NUMBER 170906795 Lien/Mortgage Fcls
_____

```
                            Balance:          0.00
              REVENUE DETAIL - TYPE: PETN TRUSTEES SALE
                  Original Amount Due:        50.00
                   Amended Amount Due:         0.00
                         Amount Paid:          0.00
                       Amount Credit:          0.00
                            Balance:           0.00
                  Account Adjustments
                  Date              Amount    Reason
                  Jan 09, 2018      -50.00    Entere Fee twice
              TRUST DETAIL
                    Trust Description: Other Trust
                          Recipient:  DO NOT RELEASE WO COURT ORDER
                         Amount Due:      12,489.02
                            Paid In:      12,489.02
                           Paid Out:      12,489.02
```

CASE NOTE

PROCEEDINGS
10-25-17 Filed: Affidavit of Deposit of Excess Proceeds
10-25-17 Case filed
10-25-17 Fee Account created       Total Due:        360.00
10-25-17 COMPLAINT 10K-MORE        Payment Received:      360.00
10-25-17 Judge BARRY LAWRENCE assigned.
10-25-17 Note: discovery tier set to 1
10-25-17 Filed: Return of Electronic Notification
10-30-17 Trust Account created     Total Due:      12489.02
10-30-17 Other Trust               Payment Received:     12,489.02
          Note: Mail Payment;
10-31-17 Filed: Notice of Disposition of Funds After Trustee's Sale
11-03-17 Filed: Return to Sender; First Franklin Financial Corp, Notice
         of Disposition of Funds After Trustees Sale
11-16-17 Filed: Return to Sender; First Franklin Financial Corp, Notice
         of Disposition of Funds After Trustees Sale
01-09-18 Filed: (Proposed) Findings of Fact and Conclusions of Law, and
         Order on Petition for Adjudication of Priority to Funds on
         Trustee's Sale Pursuant to Utah Code Section 57-1-29
01-09-18 Filed: Notice of Order
Printed: 07/03/18 15:29:14        Page 2

CASE NUMBER 170906795 Lien/Mortgage Fcls
---

01-09-18 Filed: Petition for Adjudication of Priority of Funds on
         Trustee's Sale Pursuant to Utah Code Section 57-1-29 and Notice
         of Claimants
01-09-18 Fee Account created        Total Due:        50.00
01-09-18 Fee Account created        Total Due:        50.00
01-09-18 PETN TRUSTEES SALE Account Adjustment      Total Due:
         0.00
               Reason: Entere Fee twice
01-09-18 PETN TRUSTEES SALE        Payment Received:        15.00
01-09-18 PETN TRUSTEES SALE        Payment Received:        35.00
01-11-18 Filed: : Notice of Attorneys Lien
01-11-18 Filed: Return of Electronic Notification
01-16-18 Note: Proposed order forwarded to Judge Lawrence
01-18-18 HRNG ON ADJUDICATION OF FUNDS scheduled on January 30, 2018 at
         10:30 AM in THIRD FLOOR - W37 with Judge LAWRENCE.
01-18-18 Notice - NOTICE for Case 170906795 ID 18838643
         HRNG ON ADJUDICATION OF FUNDS is scheduled.
               Date: 01/30/2018
               Time: 10:30 a.m.
               Location: THIRD FLOOR - W37
                         THIRD DISTRICT COURT
                         450 SOUTH STATE STREET
                         SALT LAKE CITY, UT   84114-1860
         Before Judge: BARRY LAWRENCE
01-18-18 Filed: Notice for Case 170906795 LM: Judge    BARRY LAWRENCE
01-29-18 Filed: Motion to Continuance of Hearing
         Filed by: KESLER, ALICIA
01-29-18 Filed: Notice of Hearing - Blank
01-29-18 Filed: Request to Submit
01-29-18 Filed: (Proposed) Findings of Fact and Conclusions of Law and
         Order on Motion to Continue
01-30-18 ADJUDICATION OF FUNDS scheduled on February 13, 2018 at 10:30
         AM in THIRD FLOOR - W37 with Judge LAWRENCE.
01-30-18 Notice - NOTICE for Case 170906795 ID 18866966
         ADJUDICATION OF FUNDS is scheduled.
               Date: 02/13/2018
               Time: 10:30 a.m.
               Location: THIRD FLOOR - W37
                         THIRD DISTRICT COURT

```
CASE NUMBER 170906795 Lien/Mortgage Fcls
_____
                         450 SOUTH STATE STREET
                         SALT LAKE CITY, UT  84114-1860
          before Judge BARRY LAWRENCE
01-30-18 Minute Entry - CONTINUANCE
          Judge:   BARRY LAWRENCE
          Clerk:   elsay
          No Parties Present
          Audio
          Tape Number:    W37   Tape Count: 10.36


          _____


          This is the time set for a hearing on Adjudication of Funds. No
          parties are present. The Court continues this matter to include Mr.
          Wall on the notice of hearing.


          ADJUDICATION OF FUNDS is scheduled.
               Date: 02/13/2018
               Time: 10:30 a.m.
               Location: THIRD FLOOR - W37
                         THIRD DISTRICT COURT
                         450 SOUTH STATE STREET
                         SALT LAKE CITY, UT  84114-1860
          before Judge BARRY LAWRENCE
01-30-18 Filed: Notice for Case 170906795 LM: Judge   BARRY LAWRENCE
01-31-18 Note: RE: Request to Submit and Proposed Order - The hearing
               has been continued to 02/13/18.
02-12-18 Filed: : Billing Detail
02-12-18 Filed: Affidavit/Declaration:  Affidavit of Attorneys Fees
02-12-18 Filed: Return of Electronic Notification
02-13-18 Filed order: ADJUDICATION OF FUNDS
                    Judge BARRY LAWRENCE
                    Signed February 13, 2018
02-13-18 Minute Entry - ADJUDICATION OF FUNDS
          Judge:   BARRY LAWRENCE
          Clerk:   elsay
          PRESENT
          Defendant(s): ALICIA D KESLER
Printed: 07/03/18 15:29:15          Page 4
```

CASE NUMBER 170906795 Lien/Mortgage Fcls

---

        Plaintiff's Attorney(s): MITCHELL S WALL
        Audio
        Tape Number:     W37   Tape Count: 10.34-10.50

        _____

        This is the time set for Adjudication of Funds.

        10.35 Ms. Kesler is sworn and testifies upon direct examination of
        the Court.

        10.36 Mr. Wall addresses the Court on Wall & Wall P.C's claim.

        10.38 Court takes a recess for parties to try and settle this
        issue.

        10.47 Mr. Wall addresses the Court on parties' stipulation to
        settle this case. Wall & Wall, P.C. to receive $2,821.60 and the
        remaining amount to be paid out to Ms. Alicia Kesler.


        Mr. Wall to prepare today's order with terms as stated on the
        record.




02-15-18 Filed: Request/Notice to Submit
02-15-18 Filed: Order (Proposed):  Order for Payment of Funds by Clerk
         of Court
02-15-18 Filed: Return of Electronic Notification
02-21-18 Filed order: Order:  Order for Payment of Funds by Clerk of
         Court
                   Judge BARRY LAWRENCE
                   Signed February 21, 2018
02-21-18 Note: The Court modified the Order. The remainder of the funds
              may be disbursed to Alicia Kesler.
Printed: 07/03/18 15:29:15        Page 5

CASE NUMBER 170906795 Lien/Mortgage Fcls
_____

```
02-21-18 Filed: Return of Electronic Notification
02-21-18 Note: 2/21 order sent to accounting
02-21-18 Case Disposition is Granted
         Disposition Judge is BARRY LAWRENCE
02-26-18 Other Trust Check #   76237  Trust Payout:     2,871.50
02-26-18 Other Trust Check #   76241  Trust Payout:     9,617.52
02-26-18 Note: CHECK # 76237 WAS MAILED TO WALL & WALL   2168 EAST FORT
               UNION BLVD.    SALT LAKE CITY    UT    84121
05-01-18 Note: **check 76241 was picked up by Alicia Kesler on
               02/27/18**
06-12-18 Filed: Appearance of Counsel/Notice of Limited Appearance
06-12-18 Filed: Return of Electronic Notification
06-12-18 Filed: Request for Discovery Orders
06-12-18 Filed: Request/Notice to Submit
06-12-18 Filed: Return of Electronic Notification
06-13-18 Note: RTS forwarded to Judge Lawrence
06-18-18 Ruling Entry - MINUTE ENTRY
          Judge: BARRY LAWRENCE
         The Respondent's Motion for entry of Orders is NOT RIPE. Respondent
         must allow parties to file responses to the Motion as per rule 7,
         U.R.C.P.
                        CERTIFICATE OF NOTIFICATION
         I certify that a copy of the attached document was sent to the
         following people for case 170906795 by the method and on the date
         specified.

         EMAIL:  J SCOTT LUNDBERG scott.lundberg@lundbergfirm.com
         EMAIL:  CANDICE L RAGSDALE-POLLOCK crpollock@hotmail.com
         EMAIL:  CORY R WALL cory.wall@walllegalsolutions.com
         EMAIL:  GREGORY B WALL greg.wall@wallattorneys.com


               06/18/2018              /s/ NICOLE ODOHERTY
         Date: _____   _____


                                     Deputy Court Clerk
06-18-18 Filed order: MINUTE ENTRY
                 Judge BARRY LAWRENCE
                 Signed June 18, 2018
06-21-18 Filed: Memorandum in Opposition to Motion for Order Requiring
Printed: 07/03/18 15:29:15         Page 6
```

CASE NUMBER 170906795 Lien/Mortgage Fcls
_____

        Trustee and Recorder to Provide a full audit report of
        distribution of Funds
06-21-18 Filed: Return of Electronic Notification